UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


INDUSTRIAL PIPING, INC.,

                 Plaintiff,

     v.

WEI XIA,TAO (MIKE) ZHANG, DAYI
(SEAN) LIU, and TIANWEI NEW
ENERGY HOLDINGS CO., LTD.,

               Defendants.

Case No. 4:15-CV-00450-EJL-CWD

**MEMORANDUM DECISION AND
ORDER**

This matter is before the Court on Defendant Tao (Mike) Zhang and Dayi
(Sean) Liu's Motion to Dismiss for Failure to State a Claim (Dkt. 15).  Having
fully reviewed the record, the Court finds the facts and legal arguments are
adequately presented in the briefs and record.  Accordingly, in the interest of
avoiding further delay, and because the Court conclusively finds that the decisional
process would not be significantly aided by oral argument, this matter shall be
decided on the record before this Court without oral argument.


MEMORANDUM DECISION AND ORDER

## BACKGROUND[1]

In February 2007, Hoku Corporation incorporated Hoku Materials, Inc. as a wholly owned subsidiary for the manufacture of polysilicon to be used in the manufacture of solar panels.  In March 2007, Hoku Corporation incorporated Hoku Solar, Inc. as a wholly owned subsidiary for the installation of arrays of solar panels.  Hoku Corporation, Hoku Materials and Hoku Solar, Inc. are collectively referred to hereinafter as "Hoku."  In 2007, Hoku selected Pocatello, Idaho as the site for a polysilicon production facility (the "Project").

When Hoku experienced financial trouble in 2009, Defendant Tianwei New Energy Holdings Co., Ltd ("Tianwei") bought a controlling interest in the company.  Tianwei installed Defendant Wei Xia ("Xia"), a resident of China, as Chairman of the Hoku Corporation Board.  Xia controlled the degree to which Defendant Tianwei would provide funding to Hoku, and thereby determined directly whether Hoku had enough working capital to meet its obligations to contractors.  Defendant Tao (Mike) Zhang ("Zhang") became Director of Hoku Corporation and President of Hoku Materials.  Zhang was authorized to execute contracts for Hoku, but did so only after getting approval from Xia.  Both Xia and

---

[1]  Unless otherwise referenced, the following facts are taken from Plaintiff's Complaint.  (Dkt. 1.)  The Court must accept as true all factual allegations contained in a complaint when deciding a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MEMORANDUM DECISION AND ORDER

Zhang continued to be employed and compensated by Tianwei, and only Zhang worked fulltime at the Project.  Tianwei also installed Defendant Dayi (Sean) Liu ("Liu"), its accounting manager, as Vice President of Finance for all aspects of Hoku's finances.  Liu worked fulltime at the Project.

In 2011, Plaintiff Industrial Piping, Inc. ("IPI"), a North Carolina company, entered into several contracts with Hoku to provide various construction services for the Project.[2]   First, by contract dated April 7, 2011 ("Tank Farm Contract") Hoku hired IPI to fabricate and install process piping in the tank farm area of the Project in exchange for payment in excess of $13 million, including change orders. By contract dated on or about July 1, 2011, Hoku contracted with IPI to supply structural steel for the Plant in exchange for payment in excess of $9 million ("Steel Supply Contract.")  Finally, by contract dated on or about September 28, 2011, Hoku hired IPI to provide miscellaneous construction services pursuant to a series of "task orders" issued by Hoku ("Master Construction Services Agreement" or "MCSA").[3]

---

[2] Tianwei and Xia are also defendants in this case.  On July 1, 2016, IPI filed a Notice of Status of Efforts to Serve Xia and Tianwei in China through the Hague Service Convention (Dkt. 28).  IPI advises service could take 7 to 12 months, or perhaps longer. (Dkt. 28-1.)  As only Zhang and Liu have appeared and sought to dismiss IPI's Complaint, the instant decision involves only IPI's claims against Defendants Zhang and Liu.

[3] The MCSA was not signed by Zhang until on or about October 6, 2011.

MEMORANDUM DECISION AND ORDER

IPI alleges Hoku was entirely dependent on Tianwei for capital, and that, for the first five quarters Tianwei controlled Hoku, the working capital deficiency averaged about negative $30 million.  Concerned that Hoku had negative working capital, Hoku's auditor (KPMG) refused to sign off on the annual financial statement for Fiscal Year 2011 without expressing concern that Hoku did not qualify as a "going concern" able to meet financial obligations over the next year. To convince the auditor to sign off on Hoku's financial statement, Tianwei issued a letter of support in which it committed to provide financial support for Hoku's operations, capital expenditures, and debt service at least through April 1, 2012. Tianwei also committed to "provide such support to the extent and when deemed necessary" by Hoku.  (Dkt. 1, ¶ 70.)

Instead of providing the funding to properly capitalize Hoku, IPI alleges Tianwei opted to keep Hoku cash poor and arranged loans on a month-to-month basis to cover only immediate construction expenses.  The minutes of Hoku Corporation's June 7, 2011 Executive Team meeting showed that the Executive Team determined Hoku Materials needed an infusion of $300 million to achieve financial independence and for it to meet its obligations to contractors on the Project.  Zhang was a member of the Executive Team and attended such meetings. Although IPI alleges Liu worked closely with the Executive Team, it does not state whether Liu also attended the Executive Team meetings.

MEMORANDUM DECISION AND ORDER

By June 30, 2011, Hoku had negative $101 million in working capital.  IPI was unaware Hoku was in financial distress when it contracted to provide services for the Project.  Over the nine month period from April to December 2011, IPI performed over $30 million in work on the Project.  Up until September, 2011, IPI was paid for its services on a timely basis.  IPI alleges defendants became aware on October 5, 2011 that they were late paying IPI's and other contractors' invoices and that Hoku would not be able to make timely payment on a number of invoices that would come due in October.  However, on October 6, 2011, Zhang executed the MCSA with IPI.[4]

Sections 3.9.4 and 3.9.7 of the MCSA provided IPI with the following assurances:

> 3.9  Representations and Warranties of Owner
> Owner [Hoku Materials] makes the following express representations and warranties to Contractor, which shall be continuing during the term of this Agreement:
> 3.9.4  Owner has thoroughly and carefully examined and fully understands the terms of this Agreement and is fully able to perform all of Owner's duties and obligations hereunder.
> 3.9.7  Owner is financially solvent, able to pay its debts as they mature and has sufficient working capital to complete its obligations under this Agreement.

(*Id*., ¶ 86.)

---

[4] IPI alleges Zhang would not issue any contract without Xia's approval.  On September 30, 2011, Liu emailed Xia to recommend that he approve the MCSA and Xia gave his approval.  Zhang subsequently executed the MCSA and sent it to IPI.

MEMORANDUM DECISION AND ORDER

On October 11, 2011, IPI e-mailed Zhang to express concern that Hoku was late in paying six invoices totaling in excess of $2.8 million.  On October 17, 2011, a representative of IPI e-mailed Liu, "Mr. Liu, please advise when I can expect payment.  My vendors and subcontractors are beginning to be concerned."  (*Id.*, ¶ 98.)  Hoku made a payment to IPI on or about October 20, 2011.  On November 14, 2011, IPI contacted Zhang about another late payment. On November 18, 2011, Zhang informed IPI by e-mail:

> The short of it is that it gets harder and harder to move U.S. Dollars from China to the U.S. as we approach the end of the year.  By the end of the year, it is mostly used up.  This isn't to say that there is nothing left to transfer.  We're working hard with Tianwei to receive an allocation of what's left.  Bottom line: Hoku/Tianwei is not a credit risk.  There is just a timing issue.

(*Id.*, ¶ 104.)

IPI alleges each of the aforementioned statements were false, as Hoku had run out of money and could not make any payment to IPI, regardless of timing or whether funds could be moved from China to the U.S.  On November 22, 2011, IPI e-mailed Zhang to notify him that Hoku owed IPI $10 million in invoices, but that IPI understood, based on Zhang's November 18 e-mail, that Hoku's cash flow was only affected in the short term and that payment would eventually be made.  On December 8, 2011, Zhang again represented to IPI that Hoku had the funds to make payment and that all of IPI's invoices would be "paid out."  (*Id.*, ¶ 111.)

MEMORANDUM DECISION AND ORDER

Hoku paid $1 million of the $10 million it owed IPI in December 2011.  Due to the delay in full payment, IPI demobilized all but one small crew by the end of December 2011.

On January 23, 2012, Zhang informed IPI that the problem with transferring money from China to the U.S. had been solved.  On January 27, 2012, Zhang again represented to IPI that payment would be made.  However, IPI never received another payment and Hoku ultimately filed for bankruptcy.

IPI filed the instant suit on September 25, 2015.[5]  IPI alleges Defendants violated North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. § 75-1.1 et. seq., by: (1) misrepresenting and withholding information from IPI regarding Hoku's poor financial condition and reliance on Tianwei for funding; (2) issuing the MCSA and allowing IPI to continue working on the MCSA and other contracts despite knowledge Hoku did not have funds to pay for IPI's services; and (3) allowing Hoku to remain undercapitalized and strategically shifting the risk of loss from Tianwei and Hoku to creditors such as IPI.

---

[5] IPI first brought suit in the District Court for the Western District of North Carolina, alleging negligent misrepresentation and violation of the UDTPA.  Defendants filed motions to dismiss that complaint and, in response, IPI amended its complaint and added a fraud claim.  On renewed motions to dismiss, the North Carolina District Court dismissed the amended complaint for lack of personal jurisdiction.  (Dkt. 15-1, p. 4.)  IPI filed the instant suit in the District of Idaho, and asserts only claims under the UDTPA.

MEMORANDUM DECISION AND ORDER

Defendants Liu and Zhang seek to dismiss IPI's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 15.)

## STANDARD OF REVIEW

North Carolina law controls IPI's state-law claims. *See, e.g., Colgan Air, Inc. v. Raytheon Aircraft Co*., 507 F.3d 270, 275 (4th Cir. 2007). However, the standard for a motion to dismiss under Rule 12(b)(6) is a procedural matter controlled by federal law. *Hottle v. Beech Aircraft Corp*., 47 F.3d 106, 109 (4th Cir. 1995) (reciting "the general rule that a federal court is to apply state substantive law and federal procedural law in diversity cases.") A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility

MEMORANDUM DECISION AND ORDER

standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully. *Id*.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principals" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept legal conclusions as true. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In light of *Twombly* and *Iqbal*, the Ninth Circuit summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th

MEMORANDUM DECISION AND ORDER

Cir. 1990), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## ANALYSIS

In their Motion to Dismiss, Zhang and Liu argue IPI's UDTPA claims are barred by the economic loss rule, that the conduct of Zhang and Liu does not constitute the "substantially aggravating circumstances" necessary to convert a breach of contract claim into one for violation of UDTPA, and that IPI does not plead plausible causation. Because the Court agrees that "substantially aggravating circumstances" have not been adequately plead with respect to Zhang and Liu, it will dismiss IPI's UDTPA claims against Zhang and Liu without addressing the other arguments presented in their Motion.[6]

### 1. Substantially Aggravating Circumstances

Codified in N.C.G.S. § 75-1.1 et. seq., the UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a).

---

[6] The Court is particularly wary of Zhang and Liu's economic loss argument, as no North Carolina court has ever addressed whether the economic loss rule bars a UDTPA claim in a published decision. *Ellis v. Louisana-Pac. Corp.*, 699 F.3d 778, 787 n. 5 (4th Cir. 2012); *Martin v. Bimbo Foods Bakeries Distrib., LLC*, 2015 WL 1884994, at *7 (E.D.N.C. 2015). As a federal court sitting in diversity, this Court declines to expand North Carolina law in the way that Zhang and Liu propose. *Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314-15 (4th Cir. 2007) (sitting in diversity, a federal court should not create or expand a State's common law or public policy).

"As is evident from the statutory language, N.C.G.S. § 7.5-1.1 prohibits two separate, although related, types of conduct.  The statute forbids conduct that is 'unfair' and conduct that is 'deceptive.'"  *Hageman v. Twin City Chrysler-Plymouth, Inc*., 681 F.Supp. 303, 305 (M.D.N.C. 1988).  Under the UDTPA, a practice is "unfair" when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Marshall v. Miller*, 276 S.E.2d 397, 403 (North Carolina 1981).  A practice is "deceptive" if it "has the tendency or capacity to deceive."  *Id*.  Neither proof of actual deception nor a showing of bad faith are required to state a claim under the UDTPA.  *Id*.  IPI alleges Zhang and Liu engaged in both unfair and deceptive conduct.

For a successful UDTPA claim, IPI must establish Zhang and Liu (1) engaged in an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which proximately caused actual injury to IPI's business*.  Kelly v. Georgia-Pacific LLC*, 671 F.Supp.2d 785, 798 (E.D.N.C. 2009).  "Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace."  *Marshall*, 276 S.E.2d at 403.  "Whether a particular practice violates the [UDTPA] is both a question of law and a highly fact-specific inquiry."  *South Atlantic Ltd. Partnership of Tennessee, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002).

MEMORANDUM DECISION AND ORDER

North Carolina courts have consistently recognized that the UDTPA does not cover every dispute between two parties, despite its expansive language. *Hageman*, 681 F.Supp. at 306-307.  Because "[p]roof of unfair or deceptive trade practices entitles a plaintiff to treble damages," a UDTPA count "constitutes a boilerplate claim in most every complaint based on a commercial or consumer transaction in North Carolina." *Allied Distributors, Inc. v. Latrobe Brewing Co.*, 847 F.Supp. 376, 379 (E.D.N.C. 1993).  "To correct this tendency, and to keep control of the extraordinary damages authorized by the [UDTPA], North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA.'" *Broussard v. Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases) (citations omitted).

Since "unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted," North Carolina law requires an additional showing of "substantially aggravating circumstances" when a party alleges violation of the UDTPA due to a breach of contract.  *Id*.  "The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements." *2 Hounds Design, Inc. v. Brezinski*, 2014 WL 4407015, at *10 (W.D.N.C. 2014) (citing *Garlock v. Henson*, 435 S.E.2d 114, 115-16 (N.C.

MEMORANDUM DECISION AND ORDER

App. 1993) (forgery of bill of sale); *Foley v. L&L Int'l, Inc.*, 364 S.E.2d 733, 736

(N.C. App. 1988) (retaining deposit under false circumstances)); *see also Mapp v.*

*Toyota World, Inc.*, 344 S.E.2d 297 (N.C. App. 1986) (when an agreement to

contract is fraudulently induced by a promise to allow rescission of the contract,

breach of that promise is sufficient to sustain an action under the UDTPA). IPI

suggests substantially aggravating circumstances are present here because Hoku

issued its contracts with IPI without the intent or ability to perform and because

Zhang and Liu intentionally withheld material information regarding Hoku's

financial situation when entering into its contracts with IPI. (Dkt. 21, pp. 7-18.)

### 2.  Issuing Contract without Ability to Perform

IPI argues defendants induced IPI into contracting with Hoku without the

intent or ability to perform because Hoku was grossly undercapitalized and

defendants knew Tianwei would not provide the necessary financial support to

enable Hoku to satisfy its obligations to IPI.[7]  (*Id*., p. 6.)  IPI states "many North

---

[7] IPI makes this allegation against all defendants.  With respect to Zhang and Liu specifically, IPI alleges Zhang and Liu:  "worked closely with [Hoku's] Executive Team;" "Defendant Xia communicated by email and telephone with Defendants Zhang and Liu, who were residing in Idaho and working full time out of the office building located at the [Project]"; "Liu was responsible for managing all aspects of the finances of Hoku Corporation and Hoku Materials;" "Tianwei, acting through Defendants Xia, Zhang and Liu, employed a strategy of denying the Hoku Entities, and Hoku Materials in particular, financial independence;" "In an email dated  September 30, 2011, Defendant Liu recommended approval of the MCSA to Defendant Xia and Defendant Xia approved issuance of the MCSA to IPI"; "Defendant Zhang subsequently executed the MCSA on (Continued)

MEMORANDUM DECISION AND ORDER

Carolina cases have found that a defendant entering into a contract knowing it could not meet the obligations under the contract violates the UDTPA.  This is true even where no misrepresentation or duty to speak is present." (*Id*., p. 11.)  IPI then summarizes a number of cases finding a violation of the UDTPA where defendants entered into a contract without the intent to perform.  (*Id*., pp. 11-13) (citing *Marshall v. Miller*, 276 S.E.2d 397 (North Carolina 1981) (affirming jury finding that defendants had promised to build facilities without intent and/or ability to perform); *Lapierre v. Samco Dev. Corp*., 406 S.E.2d 646 (N.C. App. 1991) (contractor's promise to build deck in certain location violated the UDTPA since contractor knew it was impossible to build the deck in that location); *Smith v. Dade Behring Holdings, Inc*., 2007 152119, at *17-18 (W.D.N.C. 2007) (finding substantially aggravating circumstances where defendant negotiated the agreement "knowing full well that at least a portion of the consideration could never be paid); and *Forbes v. Par Ten Group, Inc*., 394 S.E.2d 643, 644 (N.C. App. 1990) (finding UDTPA claim survived summary judgment even though defendants may have made misrepresentations negligently and in good faith, in ignorance of their falsity, and without an intent to mislead when defendants promised deposit money would

---

October 6, 2011, and sent the executed copy to IPI in North Carolina." (Dkt. 1, ¶¶ 18, 31, 63, 73, 90, 91.)

MEMORANDUM DECISION AND ORDER

be paid into an escrow account but failed to ensure escrow account was created).

The problem with IPI's argument is that the facts alleged in the Complaint

establish that defendants did not make a promise they did not intend or have the

ability to perform.  Instead, Hoku paid IPI over $20 million of the $30 million it

owed under the parties' various contracts.  (Dkt. 1, ¶¶  3, 84, 100.)  If Hoku did not

have the intent or ability to perform under its contracts with IPI it wouldn't have

satisfied over $20 million of the obligations it owed IPI.

        To state a claim under the UDTPA where, as here, substantially aggravating

circumstances are required, the acts or practices complained of must be "actually

deceptive or approach deception" and  the deception or unfairness must be "present

at the time of contract formation."  *United Roasters, Inc. v. Colgate-Palmolive Co*.,

649 F.2d 985, 992 (4th Cir. 1981).  Defendants' repeated satisfaction of their

obligations under their various contracts with IPI suggest not only that there was

nothing unfair or deceptive in the formulation of the contracts, but also that

defendants' ultimate breach was not intentional.  As noted, even an intentional

breach is not sufficiently unfair or deceptive to sustain an action under the

UDTPA.  *Broussard*, 155 F.3d at 347; *see also South Atlantic*, 284 F.3d at 536 ("It

is clear…that conduct carried out pursuant to contractual relations rarely violates

the [UDTPA].").  Instead of a case where a defendant entered into a contract

without the intent or ability to perform, such as those IPI cites, the facts, taken in

MEMORANDUM DECISION AND ORDER

the light most favorable to IPI, establish defendants both intended to pay IPI and did so until Hoku ran out of money.  Rather than an unfair or deceptive act, the facts suggest a change in circumstances.  Despite Hoku's ultimate failure to perform its contractual obligation to pay IPI, the Court finds IPI has not alleged "substantially aggravating circumstances" that would justify the extraordinary remedy of treble damages under the UDTPA.  *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989).

IPI also alleges various representations Zhang and Liu made from October 2011 to January 2012 regarding when IPI could expect payment under the MCSA were deceptive.  *See, e.g.*, (Dkt. 21, p. 5); (Dkt. 1, ¶¶ 97-116.)  However, the MCSA and other agreements were all signed prior to such representations.  Since deception must "be present at the time of contract formation," Zhang and Liu's purportedly deceptive representations regarding Hoku's ability to pay IPI after the relevant contracts were signed cannot support a claim for violation of the UDTPA. *United Roasters*, 649 F.2d at 992; *see also Hageman v. Twin City Chrysler-Plymouth, Inc.*, 681 F.Supp. 303, 307 (M.D.N.C. 1988) (alleged deceptive representations made after contract was executed did not rise to level of UDTPA claim).

MEMORANDUM DECISION AND ORDER

### 3.   Deliberate Withholding of Information

IPI also alleges substantially aggravating circumstances are present because defendants deliberately withheld that Hoku was in financial distress when contracting with IPI.  (Dkt. 21, pp. 14-15.)  However, the facts alleged in the Complaint illustrate Hoku made multiple payments to IPI and honored its various agreements with IPI for months despite its longstanding financial distress.  For instance, in 2009, two years before IPI contracted with Hoku, Hoku faced a "liquidity crisis" and had a working capital deficiency of $37 million.  (Dkt. 1, ¶¶ 48-49.)  Tianwei purchased a 60% share of Hoku in December 2009, but "never allowed the Hoku Entities to operate with positive working capital again."  (*Id*., ¶ 53.)  Hoku's Fiscal Year 2012 Operating Plan, dated May 19, 2011, just one month after IPI entered into its first contract with Hoku on April 7, 2011, projected Hoku would need an additional $199 million capital infusion to complete construction of the Project.  (*Id*., ¶¶ 52, 56, 59.)  Despite this, Hoku continued to pay IPI in full throughout the months of April, May, June, July, August, September and October, 2011.[8]  Defendants cannot be said to have deceptively withheld information where such information was not apparently relevant to Hoku's ability

---

[8] Hoku's payments were late for the first time in mid-September, 2011.  (Dkt. 1, ¶ 84.)

MEMORANDUM DECISION AND ORDER

to satisfy its contractual obligations to IPI.  Hoku paid IPI under the contracts notwithstanding its shaky financial situation.  Moreover, as Zhang and Liu note, Hoku's financial condition was publicly disclosed in quarterly SEC reports.  (Dkt. 15-1, p. 12.)[9]  IPI does not offer any explanation for how Zhang and Liu could have deceptively withheld publicly available information.

IPI also faults Zhang and Liu for not advising IPI that Tianwei had not met its commitment to provide capital and that Hoku's Executive Board knew Hoku would not be able to pay invoices in October on a timely basis.  Again, however, the facts show Hoku made millions of dollars in payments to IPI despite Tianwei's alleged plan to keep Hoku undercapitalized.  (Dkt. 1, ¶¶ 54, 72-78, 84.)  Although its payment for October, 2011 was late, Hoku also satisfied its October obligation to IPI.  (*Id.*, ¶ 99.)  Zhang and Liu cannot be said to have deceptively withheld information where such information was not material to Hoku's ability to pay IPI.

IPI also claims Zhang "acted recklessly with a conscious disregard for the truth in making the representation in section 3.9 of the MCSA that Hoku Materials had sufficient working capital to complete its obligations under the MCSA."  (Dkt. 21, p. 7.)  As mentioned, Section 3.9 of the MCSA stated Hoku was "fully able to

_____

[9]Zhang and Liu cite to ¶ 167 of a prior complaint IPI filed against Defendants in the Western District of North Carolina.  (Dkt. 22-1).  This Court took judicial notice of the aforementioned complaint on May 19, 2016.  (Dkt. 26.)  As such, the Court may consider the prior complaint when ruling on the Motion to Dismiss.  *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).

MEMORANDUM DECISION AND ORDER

perform all of [its] duties and obligations" under the MCSA, and that Hoku was "financially solvent, able to pay its debts as they mature and has sufficient working capital to complete its obligations under this Agreement."  (Dkt. 1, ¶ 86.)  In short, IPI alleges Zhang knew Hoku could not live up to the terms of Section 3.9 and should have disclosed this fact to IPI.  This allegation is another way of claiming defendants breached Hoku's express contractual warranty to IPI.  Under North Carolina law, a breach of warranty claim is insufficient to state a UDTPA violation.  *Kelly v. Georgia-Pacific LLC*, 671 F.Supp.2d 785, 799 (E.D.N.C. 2009).  Such claim is more appropriately addressed "by asking simply whether a party adequately fulfilled its contractual obligations" and does not rise to the level of the "substantially aggravating circumstances" necessary to state a claim under the UDTPA.  *Yancey v. Remington Arms Co., LLC*, 2013 WL 5462205, *10 (M.D.N.C. 2013) (quoting *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 533 S.E.2d 827, 833 (2000)).

Finally, while the Court finds IPI's Complaint should be dismissed without prejudice because it is conceivable IPI may discover and appropriately allege plausible evidence of substantially aggravating circumstances,[10] the Court notes the

---

[10] A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

MEMORANDUM DECISION AND ORDER

Fourth Circuit has held the UDTPA is not applicable to a contractual dispute, such as that involved here, between two sophisticated business entities. *PCS Phosphate Co., Inc. v. Norfolk Southern Corp.*, 559 F.3d 212, 225 (4th Cir. 2009). In so holding, the Fourth Circuit noted the UDTPA "was intended to benefit consumers." *Id.* (quoting *Dalton v. Camp*, 548 S.E.2d 704, 710 (North Carolina 2001)). Where an UDTPA claim essentially rests on the breach of an agreement between two sophisticated business entities, the dispute is "wholly divorced from the context of consumer transactions" and a claim for violation of the UDTPA simply "will not fit." *Id.*

In sum, all of the alleged misconduct, withheld information, and representations IPI raises are inextricably tied to whether Hoku could or would perform its obligation to pay IPI under the various contracts. Such claims may support a cause of action for breach of contract but do not, without substantially aggravating circumstances not alleged here, state a claim for violation of the UDTPA.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. Defendants Zhang and Liu's Motion to Dismiss for Failure to State a Claim (Dkt. 15) is **GRANTED**;

MEMORANDUM DECISION AND ORDER

2. IPI's claims against Defendants Zhang and Liu are **DISMISSED WITHOUT PREJUDICE**;

3. IPI's claims against Defendants Xia and Tianwei remain open.

SO ORDERED.

DATED: September 28, 2016

Edward J. Lodge
United States District Judge

MEMORANDUM DECISION AND ORDER